## Case No. 7,136.

### JACKSON v. The JULIA SMITH.

[Newb. 61; [1] 6 McLean, 484.]

District Court, D. Michigan.   June, 1855.

[1] [Reported by John S. Newberry, Esq.]

Wilcox & Gray, for libelants.
Lothrop & Duffield, for respondents.

WILKINS, District Judge. The libel and evidence in this case exhibit a contract of affreightment, entered into at Chatham, Canada West, between the libelant and the vessel, on the 8th of June, 1854, for the transportation and delivery of a quantity of tobacco at Garden Island, near the port of Kingston. It is further shown that the tobacco was received, and the vessel departed upon her voyage, but that the tobacco was not transported and delivered according to contract, having been intercepted at Detroit, in consequence of the same having been landed at that place, in supposed violation of the revenue laws of the United States. Damages are claimed for the breach of the contract. It is in proof that on the 9th day of September, 1853, one George S. Lester was the owner of the vessel, and under a contract of sale with James Reeve, then gave him the exclusive possession of the same, and that this exclusive possession continued in the said Reeve up to the 11th of June, 1854, three days subsequent to the contract of affreightment made in the libelant. It is also in proof, that while this possession continued, the vessel was employed by the said Reeve, in the coasting trade between different ports in the province of Canada, and that at the time the contract of affreightment was entered into, she was under the command and control of one John Bruce, as master, holding his appointment from the said Reeve: that the said tobacco was then shipped at the port of Chatham, the said Bruce as master, contracting for a stipulated compensation to deliver the same in good order at her port of destination.

It is conceded that the contract of sale between Lester & Reeve, was broken by the latter, in his not making the payments promised [that in order to avoid being seized by Lester under process, the vessel kept in foreign waters],[2] and that, on the 11th of June, 1854, the former sued out from the appropriate court of the state of Michigan, a writ of replevin, by which the vessel [with her cargo, while lying at anchor in the British channel of the Detroit river],[2] was seized by the sheriff of Wayne county, and forcibly, and against the will of her master, brought into the port of Detroit; and as averred in the answer, was sold and delivered to the respondent: that on receiving possession of the said vessel from the sheriff, her cargo was discharged by Lester, and the tobacco being seized by the revenue officers, was deposited in a warehouse for, and afterwards sold and bought in by Lester, subject to the order of the owners: that the libelant had no agent in Detroit, and Lester now holds the same for the libelant, to be delivered on being reimbursed his expenses. There is no proof that any public notice was given by Lester, of his claim to the vessel, or that Reeve had not kept his engagement, from September, 1853, till June, 1854, or that the libelant was made aware of the true character of the vessel, when he shipped his property at Chatham. Before and at the time of the contract of sale, she was called the Julia Smith; when in the possession of Reeve, she was called the Mazeppa.

Under the circumstances disclosed, the possession of Reeve was not tortious. His refusal to carry out his contract, did not affect the character of his possession, especially as to third parties. He took possession with Lester's consent, and was, therefore, clothed with power to use her as long as that possession continued. Bruce was her master, and at the time of the contract of affreightment rightfully represented and could bind the vessel. It is not the case of a vessel stolen, or where possession has been fraudulently obtained. The vessel was delivered to Reeve at the time of the contract by Lester, and the former's failure to fulfill his engagement, did not make his possession unlawful ab initio, or vitiate the contracts of the vessel while this possession continued. Such a rule would be destructive of maritime confidence, and place the shipper in a foreign port on inquiry as to title, which is not necessary, and would in most cases be impracticable. Ostensible ownership, and present possession and authority, are sufficient to bind the vessel. The rights of seamen and shippers cannot be affected by the unknown private contracts of other parties claiming interest in, or controverting her title.

The contract being binding on the vessel, and the goods never having been delivered, the only question remaining is, as to the measure of damages. When goods regularly shipped, are not delivered according to contract, the carrier is bound to make good to the shipper the actual loss which he has sustained; or, in other words, to place him in as good a position as he was when the contract was made. In determining this question, the court has nothing to do with the antecedent or subsequent relation which Lester

bore to the vessel. The contract was with the Julia Smith, then known as the Mazeppa. Whether or not Lester had a right to retake the vessel, and that the damages accrued in the exercise of his legal right, is not the question before the court. The vessel being held responsible, must make good to the libelant his loss, consequent on the failure to perform the contract. This clearly embraces the value of the tobacco shipped at the port of Chatham at the time of the contract; crediting the vessel with the amount received, as the proceeds of sale. Lester is not entitled to be reimbursed for his expenses by the libelant. The captain of the vessel was the agent of the shipper, and the property having passed from his custody, his agency ceased, but that of Lester was not created. I cannot assent to go beyond this principle, in the assessment of damages. Having determined that the vessel is responsible for the contract, and consequently responsible for its non-fulfillment, and, therefore, bound to make good the loss, I am not satisfied that the expenses of the libelant in visiting Detroit in search of his property, and defending the same in court, can be properly embraced within the measure of damages. The market value of the tobacco at Chatham, when shipped, with interest on such value, is making good the loss on the contract, and as against the vessel. The landing of the goods without manifest, was not the act of the vessel, and if it was, it should not enhance the damages in this suit. The leading question here is, the injury consequent on the non-delivery at Garden Island; and as there is no proof that libelants have suffered in that regard, the measure must be the value irrespective of incidents independent of the contract. The tobacco has not been delivered, has not been received, neither is there proof that in consequence of it the libelant has been put to other loss. Decree therefore for the value of the tobacco at Chatham, on the 8th of June, 1854, interest on such value, and the clerk to take the necessary proof, crediting the respondent with any money paid on account.

As to Waters, the intervening libelant, decree for the value of the staves, with interest from the same date. His bonding the articles after seizure and defending the same in court, does not come within my view of the vessel's making the shipper good, under the contract of affreightment. Either the present owner or Reeve, may be answerable in another form of action for this claim; but as it was not necessary for Waters either to bond or to prosecute, in order to secure his rights under the contract, I cannot decree his expenses as a legitimate part of the damages in this case.